Case number 185450 United States of America v. Alan Godofsky. Arguments not to exceed 15 minutes per side. Mr. Mazzoli, you may proceed for the testimony. I'm going to start with the main specialist who was convicted of 5 counts of drug trafficking based on prescriptions that he wrote for controlled substances, in this case Noxicodone, for people who were in those particular instances of the crime, undercover agents. And he, through the case, I'm generalizing now, but I'll give some details as I get into my argument. The evidence showed over and over again that Dr. Godofsky was approaching his patients with the best intentions, was reviewing the particular patient's file and looking at particular things and trying in every instance to make a decision that was geared toward that patient's individual needs and with the desire of improving that patient's care and physical condition. At the end of the case, the defense counsel asked for a good faith instruction just like the one that this court has approved many times, most recently in the Volkman opinion. A good faith instruction that would tell the jury that the doctor was exempt from liability as long as he acted in good faith, with good intentions, honest exercise, professional judgment. The district judge said no, that he could not have that instruction. And the question for the court is, and my purpose here is to convince the court, that that was reversible error. Dr. Godofsky, I'm still generalizing for a moment just to set the stage, Dr. Godofsky is a 30-year specialist, an anesthesiologist in pain care, not a ton income lately. He had worked here in Cincinnati for many years, Cincinnati being at the time and today still, as far as I know, a national and world leader in pain specialties, pain medication. He came to a point where he wanted to basically semi-retire, and he found himself a job as a local attendant in what eventually turned out to be, even to Dr. Godofsky, a bad place to work. It was certainly by the evidence of pill mail. Although Dr. Godofsky, as I will explain, wasn't part of that pill mail and in fact was acquitted of conspiring with anybody else there to run a pill mail. So the jury did not think that he was part of an operation, even though it was in fact a pill mail operation. Dr. Godofsky was acquitted of that. The evidence, for instance, will show that in one case Dr. Godofsky's physical therapy was so convincing that even one of the undercover agents who was there just pretending to be in pain, Dr. Godofsky was so convincing about that person's need to get physical therapy that this undercover person actually went and got physical therapy. The evidence also shows Dr. Godofsky picking up on subtleties and MRIs and things like that, actually picking out things that were important and meaningful to the patient's medical condition. The good faith instruction that was requested was one that I think is reviewed by this court for three elements to determine whether it's a reversible error. First, was it a correct statement of the law? And I think the government has agreed that in fact it was a correct statement of the law. The other two points, though, that I will need to cut out and turn to and argue about will be, was the good faith concept substantially covered by the instructions that were actually given to the jury? And last, did the absence of a good faith instruction substantially impair the defense in this case? And I'll cover those in that order. I'll start with whether good faith was substantially covered by the instructions actually given. And in that respect, there are actually two points that I'll make. One is that good faith is not a concept that's inherent in any of the words or concepts that were actually read to the jury in the jury instructions. And secondly... Can you distinguish that from... Yes, Your Honor. De Boer... De Boer, yes, Your Honor. Can you make a distinction? Because it's true that there's a difference in the way it's stated. In De Boer... Yes. In your request for a direct statement of good faith. Indeed. So why was De Boer not covered in this? Certainly. Well, to begin with, it has to be... it has to be understood in the context of the standard of review that was in place in that case. It was plain error. The defendant in De Boer was not a doctor, was not a pharmacist. That defendant actually agreed to whatever the instructions were. The court's opinion in De Boer doesn't say what the instructions were at trial. It doesn't necessarily say there was nothing said about good faith. Only that on appeal, the defendant in retrospect would say, I should have gotten a different good faith instruction, or I should have been given a good faith instruction. We don't know what good faith instruction he was asking for in De Boer, so it could have been... there have been some outlandish arguments about good faith that I certainly see any court would reject and say that's not the proper law. In the plain error standard, the court's question is not to determine was this a correct statement of the law, only that was this an error. So in a sentence, frequently this court can say that was erroneous, but it wasn't egregiously wrong, and therefore we're not going to... The court in De Boer didn't say, didn't use your language of it being egregiously wrong. The court did say that he was looking for plain error, right? Yes. I recognize that. But what the court actually held was these instructions effectively informed the jury of the good faith defense, which that doesn't seem to me to hinge on what standard or view the court was looking at, whether it was looking for abuse of discretion, good faith, or whatever, an egregious error or not. That's a pretty broad statement of what the instructions did. Yes, Your Honor. I don't think it was intended, though, to be understood as a statement, as a matter of law. The words that were actually given in the De Boer trial court were sufficient in all instances to explain the good faith concept. I think the court would have been much more clear and deliberate if it had meant to give that sort of direction to practitioners everywhere in the country. And this court has never... I'm sorry, everywhere in the country has never said, well, as we said in De Boer, you don't have to give a good faith instruction because De Boer did not say that. De Boer did use the word sufficiently, I guess it was that the concept was sufficiently communicated by the instructions actually given. But again, it was not in the context of asking, was this proper under all circumstances? That's really what our question is here in this court. Is it proper in every case for a court simply to say, I hear what you're saying about good faith, but I don't give good faith instructions because De Boer said I don't have to. I'm positive that's not what De Boer was trying to tell practitioners or judges. Counsel, let me ask it to you this way, that the instruction that was given says the government must prove beyond a doubt that the defendant acted outside the scope of professional medical practice and not for legitimate medical purpose. Now those are the exact words that are used in the wrap-up invokement. Yes. Am I right about that? Yes. And first, if that is the instruction, how could you have been acting in good faith if the government has proved beyond a reasonable doubt that you have acted outside the scope of professional medical practice and not for a legitimate medical purpose? Yes, sir. Those standards, those particular magic words come from a regulation, the DEA regulation 1306.04. I'll just call it the regulation. And it is those words that describe what is a valid prescription. Let me begin with an alternative example and have a doctor who leaves a sponge inside a patient during surgery. Is there a legitimate medical purpose to leaving a sponge inside a patient? No. Is it part of the usual course of medical practice to leave a sponge inside a patient? No. If the doctor said, but I was using my best intentions, good intentions, honest exercise of professional judgment, I was trying to do the right thing, is that a defense in any civil context? No. In the case of writing a prescription, what you had was a clash of experts, different experts saying on the one hand Dr. Gadowski was doing the right thing in every instance. On the other hand, the experts saying, no, he's not doing the right thing in every instance. What it comes down to is the standard of care without asking anything about what's in his, what's his purpose to be, why is he writing these prescriptions? Only was this prescription legitimate? Only is this prescription something that should be given in the usual course of medical practice? It is like a malpractice standard. In fact, those exact words would apply if the DEA were determined whether the doctor was going to lose his DEA license number for writing these prescriptions. In the Kentucky Board of Medical Licensure, it uses those exact same words and will take away a doctor's license if he or she fails to meet that standard of care. A doctor in a malpractice lawsuit in a civil court is going to get hit with damages if the jury believes that he did not meet the standard of care. I hear that. All right. Let me pursue, go one step further. Obviously, Volkman has indicated that this type of instruction is permissible and you had Judge McKinley's instruction that you tried to sell Judge Caldwell unsuccessfully, but are there any cases that affirmatively say that failure to give an instruction that uses the words good faith, because at least part of the question here is if the instruction given adequately covered it, then it was a good faith instruction, it just didn't use the words good faith. So, there's no pattern of good faith instruction, I take it, and do you have any case where there has been a reversal for failure to give an instruction that uses the words good faith? Well, I can tell you that in the Carroll case going all the way back to 1975, the first of many circuit cases to discuss this, the Carroll case reversed because there was no good faith instruction given in that case. What you characterized, again, is no good faith instruction. Did it use what the court did give? Was it what was given here and given at the end of Volkman? That is, the government must prove that it was not for a legitimate medical practice in the usual course of professional practice. I don't think that the court has ever dictated that this is a model instruction or a pattern of instruction. No, I'm just asking, what was given that was reversed? Because, obviously, if they failed to give anything that indicated that legitimate medical practice was a defense. Indeed. What was given was the statutory language, but in what existed back then in the Controlled Substances Act, it's been amended and replaced so that by now you can't find those words anymore. But what the Carroll court said, and I think it's very important, is that good faith is inherent in the design and structure of the Controlled Substances Act, at least as far as it regards physicians and the determination of whether a physician has trafficked in drugs. It's inherent in the statute, even though those words don't appear in the statute. So to summarize, you're really saying that a doctor can do something that is not for a legitimate medical practice, but nevertheless be doing it in good faith. Yes, Your Honor. Yes. And that gets to the third element. We interrupted your listing of the three. Yes. Could you briefly tell us your argument on the third element? Yes, Your Honor. When one reviews the transcript, one sees that the strategy of the defense from the very start was to accept the fact that there's a battle between the experts as to whether it was done exactly right or exactly wrong. But over and over again, the emphasis was, Dr. Godofsky reduced your pain medication, didn't he? Dr. Godofsky pointed out that he saw something about your kidney on the MRI and he told you you needed to have a specialist look at that. Dr. Godofsky told you that you needed to get physical therapy to get off this oxycodone. The point being to show that, and of course the Volkman case has been just decided recently at the time that this trial took place. So basically it was trying to set up all of the different factors that the good faith instruction in To the extent, and I don't concede that Dr. Godofsky committed malpractice, but surely the jury believed that. Otherwise they wouldn't have convicted him at all. If they thought that he met the perfect standard of care, rejected the governance defense expert and said yes, he did everything right, then his good faith would almost be irrelevant. But in a case where he doesn't measure up for whatever reason to the legitimate, I'm sorry, to the standard of care as comprised in that legitimate medical purpose and usual course of medical practice, and there was expert testimony that said he fabled. The one thing that Dr. Godofsky could fall back on with certainty is I was acting with the best intentions, even if others... So it's reversible error to get down to the no. Yes. It's reversible error because it doesn't recognize this distinction that the law recognizes between civil liability for malpractice and the intentionality that is required in the criminal law. Is that the difference? Yes, absolutely. Okay, thank you. Thank you, Your Honor. May it please the Court, Ron Walker on behalf of the United States, Mr. Mazzola. The trial court did not abuse its discretion in denying Dr. Godofsky's request for good faith instruction, and its sentencing rulings are valid and reasonable. The court should affirm because the correct was incorrect, it is harmless because the evidence was overwhelming against Dr. Godofsky. I'd like to address a couple of the questions that the court has posed to Mr. Mazzola. First, with Judge Bodd's comment regarding the dichotomy between good faith and practicing within the usual course of business or professional practice, and Judge Bodd is absolutely correct. If in the jury determines that he was not practicing within the usual course of business or usual course of professional practice and not for a legitimate medical reason, then he is not acting within good faith. With respect to a very important distinction regarding the instructions here and the instructions that were given in Volkman, this court, as the judge said, did not give those particular instructions. But they're not an incorrect statement of the law, are they? They are not an incorrect statement of the law. And that's what's concerning, because your argument to the district court was that you can't give that instruction because that makes it a subjective standard and that is not the law. But Volkman and Voorhees, they are the law, aren't they, in this circuit? They are the law, but let me bring the court back to Volkman in a very important paragraph that was not included in Dr. Godofsky's proposed instruction. On page 377 of the Volkman decision, the paragraph starts, a physician's own individual treatment methods do not by themselves establishes what that paragraph was omitted from the proposed instructions. Therefore, that definition of good faith, standing alone, was not an accurate statement of the law. The law is that his subjective intent is not the usual course of professional standard, standing alone. And that was not what was... What I'm struggling with is that the professional standard concept is the distinction that your opposing counsel is trying to draw. You can be guilty of violating that professional standard, period. You are guilty of malpractice and not guilty of this criminal violation because you acted in good faith without the necessary intentionality. So I'm struggling to understand. I'm not clear on your argument about why the proposed instruction was wrong because it makes what is a valid distinction in the law, that distinction being between violating standards that make you guilty of malpractice and yet not violating a standard that might make you guilty of criminal violation because you acted in good faith. That is true in the context of, and again, in Volkman, the court specifically said, context is critical. In this particular case, the argument was that good faith means good intentions and an honest exercise of professional judgment as to a patient's medical needs. It means that the defendant acted in accordance of what he believed to be proper medical practice. What he believed, that is not, that paragraph, that definition of good faith only covered the subjective intent of Dr. Vidoff's. Volkman specifically says a physician's own medical, own individual methods do not by themselves establish what constitutes a usual course of professional practice. That was omitted. In context, the jury would have been given the impression that if only, if Dr. Vidoff believed reasonably that he was practicing in the ordinary course of business, then he was not able to be convicted. That was not the law. That is not the law. And the court specifically acknowledged that by saying that's not the law. You can argue that he acted in good faith in the course of professional practice. Isn't that the question before this court? What is the law in this circuit? And doesn't Vorey's, wasn't the request effectively a Vorey's request? And didn't the Vorey's court say that this is a clear, clean statement of the law and it is correct And that's correct. So here's the distinction here. If he asks a Vorey's instruction, why is that not correct? He didn't ask for a Vorey's instruction. He asked for a good faith instruction and he gave the instruction from Volkman. And the court gave, relying on Debris, I mean Vorey's, I mean Deboer's and Dejary, Dargy, specifically, this court has specifically approved the instruction given that given the 21-841 legal definition and the 21 CFR are a legitimate and valid instruction that covers good faith. And this to Mr. Mazzoli, that is the law as well. That it is a perfectly legitimate exercise of trial court's discretion to utilize those instructions. Wasn't that decision that it's not plain error? It is. That decision was it was not plain error to give that. But we're at a different standard here. So why doesn't the Vorey's statement, you know, it seems to me that Vorey's really does address the distinction that we're trying to get to here because it says, you know, the district court's instruction, the jury must find that the physician acted in the usual course of professional practice. But then it went on to emphasize the instruction does not stop here. Rather, the district court must specifically instruct the jury that the physician was not liable if he acted in good faith, which meant that he acted in accordance with what he reasonably believed to be proper medical practice. And that's what I'm struggling with is the Vorey's explanation that you're right on the first part of the claim. They do have to show that. And the jury does have to be instructed in that. But there's a second step that it seems to me was missing from this instruction. Well, Your Honor, I believe that in the context of looking at DeBoers and Dargy, that this court has recognized that by giving that CFR and the 841 instruction in conjunction with each other, that that covers good faith. There is nothing that requires the court to have a specific instruction that says good faith in the instructions. Do you know if the jury says that? No, I don't think that Vorey's requires that a court give an instruction that specifically says good faith. I think that the court... What is its language that says that after you have listed this standard, the instruction does not stop there. What does that mean if it doesn't mean you have to go on and say to the jury effectively, this doctor may have committed malpractice and there may be a claim against him. He did not conform to the usual and expected standards in the medical community. But you also have to ask them whether he met the requirements to also be criminally liable for that conduct. Well, I think that when the court considers the overwhelming nature of the evidence against Dr. Budofsky in this case, first, one, that this is an abuse of discretion standard that the court is considering the trial court. And did she give the appropriate statement of law? And I believe that in courts with both Vorey and Dargy, there is a correct statement of law. Secondly, when the court considers this evidence in light of whether it's prejudicial, the evidence was overwhelming against Mr. Dr. Budofsky. This is a situation in which he had never practiced in the pain clinic environment that he was, for less than one year, he prescribed more than 6,000 prescriptions, more than 500,000 units of oxycodone. In less than one year, working at a basically two and possibly three days a week during that time. So your argument would be that it's harmless even if it wasn't a religious instruction because it did not, under the prejudice court, impact the verdict here based on the overwhelming evidence? That is correct, Your Honor. In the event that the court does believe that divorce or specific instruction, however, Vorey's and Volkman, none of these cases really, and Volkman specifically said that this court has not explicitly set forth explicit requirements. And so the trial court has the discretion based on the facts and circumstances of each case to determine what is the appropriate instruction. So you're not saying that Volkman is wrong either, you're just saying either one of them would be within the court's discretion? Absolutely. And when the court considers that this is a situation where Dr. Budofsky was initially told he would see 20 to 25 patients, he ended up seeing somewhere between 50 patients a day, sometimes up to 80. The clinic stayed open and as Mr. Mazzoli has already recognized, this was, in fact, a pill mill. And Dr. Singleton, the owner of the pill mill, has been convicted and the court's opinion has been rendered on that. His emails communicated that with his local attendants that he was too busy to put notes in the patient files, that he recreated and fabricated patient files, patients ordering pills like candy. His own clinic expert admitted that he did not conduct the practice that Dr. Budofsky was doing. He voluntarily entered into an agreed order with the Kentucky Medical Board of Licensure that he was not conducting practice in the usual course of business. And not for legitimate reasons. The epitome of this conduct is available through the testimony and the recordings. Understand that the jury not only was listening to these things about what Dr. Budofsky did or didn't do from the expert, they actually heard and saw recordings of some of these undercover cooperating witnesses in the treatment room with Dr. Budofsky. And with Shalane Adelot, he goes into you and explains that your symptoms do not justify me prescribing oxycodone. Specifically told her that. And yet, at the end of that exam, he prescribed her oxycodone for 30 days because he said, I'm afraid of withdrawals. Well, that in and of itself is in violation of the Harrison Act. And secondly, the KVML guidelines that he reviewed prior to taking the position indicated that he should refer that patient for further treatment. Hey, counsel, let me take you back a minute. A couple of minutes ago, I thought I heard you say that in Volkman, the court said, and I may not be quoting you exactly, something along the lines that we didn't have definitive measures of what the instruction should read. I'm not quoting you exactly, but you seem to indicate there was something in Volkman that indicated there were many different ways to give an appropriate instruction. Can you remind me of what you actually said, what you were quoting from Volkman at that point? Yes, Your Honor. The court explicitly recognized that there are no specific guidelines for instructions for defying good faith or in these pill-meal contexts. These instructions are, and as this court acknowledged, these were models, but they're not required. Okay, do you know where in Volkman you were adverting to right there where you say there are no standards, again, the words you used were something like no particular standards for these instructions? Because in Volkman, in the end, the court did uphold a rejected challenge to the instructions that were given on several different grounds, but I wanted to be able to point or read myself what it was you were referring to in terms of saying there were no standards. Your Honor, I don't have that specific... Okay, but the concept of your pointing that I should be able to find in Volkman is something along those lines? Yes, Your Honor. Volkman solves that problem in one particular way, but your argument is there are other ways as well. Is that fair? That is correct, Your Honor, and even though I can't find it right now, it is specifically addressed in my brief. Okay, that's fine. Thank you, Your Honor. Are you talking about the point at which the court in Volkman said in considering whether the defendant acted with a legitimate medical purpose in the course of mutual professional practice, you should consider all of the defendant's actions and the circumstances surrounding them? Am I referencing that in regards to Judge Boggs? No, there's a specific, actual, those specific words were used by the court, and I apologize for not thinking, but it is specifically addressed in the brief. In sight, I have no further time. I would ask the court to overrule the defendant's, Dr. Bedosty's motion or request for, and find that the court acted in correct. Thank you. If I may start briefly with the Volkman case and where everyone wound up, I believe that what Mr. Walker is remembering is Volkman emphasized that you can't set a special set of circumstances, like a particular list that must be shown in every case to get a doctor, for a doctor to be convicted. The defendant in Volkman actually said, I'm innocent unless you show that I'm acting as a drug dealer conventionally understood. In Volkman, the court said, no, no, no, the evidence is much broader than that. And in that case, it seems, and I think the same is true in Cheney, the very recent case that we talk about in our 28-J letter, good faith is a limiting factor. In other words, what the court was saying in Volkman is a doctor who is acting in good faith is what we're thinking about. That's the person who gets to be exempt. It's not that a doctor is exempt unless and only if he's not guilty in that respect. Let me ask you about that. Your instruction, your proposed instruction from Judge McKinley's court tracks Volkman exactly in most of its language. It adds language that isn't in Volkman. If you find that the defendant acted in good faith, then you must find the defendant not guilty. And isn't that something you don't usually see, that you're trying to make the finding of innocence, not the standard, the factors that the government must prove, because it makes it kind of sound like the government must disprove the words good faith. You're trying to make the jury make a finding of good faith. Where does that come from? Your Honor, I believe that that last bit of language comes from the Sixth Circuit's pattern of instruction for the good faith defense in fraud cases. So I think that's where it came from. I can't say for sure that I saw it there, but I think that's where it came from. Very briefly, why is this not in English? Do you have anything further to add to your argument as to why this requires reversal even if it were in English? Your Honor, I would say on that point that the evidence was not overwhelming. I recognize that there was a lot of evidence that, especially with the help of the defense expert, paid Dr. Godofsky in a bad light. And I wasn't trying to argue that he should have been acquitted based on the evidence, because I think that there was evidence to support that he at least violated the standard of care. The point that we have said is that it was unfair for Dr. Godofsky not to be able to show that he made those mistakes, if that's what they were, in good faith. There was so much of that evidence that cannot be said, that it was overwhelmingly proof that he was not acting in good faith. Thank you. Yes. We appreciate your arguments and your briefing, and the case will be taken under advisement in our opinion. Thank you, Your Honor.